CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

2011 NOV -8  PM 5:12

BY___

FILED

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. CR 11 01068 |
| Plaintiff, | **I N D I C T M E N T** |
| v. | [21 U.S.C. § 846: Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances; 18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing in Firearms without a License; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(viii), (b)(1)(B)(viii), (b)(1)(C): Possession with Intent to Distribute and Distribution of Heroin, Methamphetamine, and Cocaine; 18 U.S.C. § 924(c)(1)(A): Use and Carry a Firearm During and in Relation to, and Possession of a Firearm in Furtherance of, a Drug Trafficking Crime; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm; 26 U.S.C. § 5861(e): Illegal Transfer of a Firearm; 26 U.S.C. § 5861(d): Possession of an Unregistered Firearm; 21 U.S.C. §§ 848(a), (b), (s): Continuing Criminal Enterprise] |
| LUIS MANUEL TAPIA, aka "Taps," aka "LT," aka "Bizee," FNU LNU, aka "Pancho," DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," EDGAR RAFAEL AGUILAR, aka "Li'l Silent," aka "Silent," aka "Pilot" ROGER GONZALES ARMENDARIZ, aka "Chumash," aka "Twenty-four," and JAIME CARDENAS, aka "Terco," aka "Li'l Pilot," | |
| Defendants. | |

1    The Grand Jury charges:

2                           COUNT ONE

3                       [21 U.S.C. § 846]

4    A.    OBJECTS OF THE CONSPIRACY

5          1.    Beginning on a date unknown, and continuing to on or

6    about October 25, 2011, in Ventura County, within the Central

7    District of California, and elsewhere, defendants LUIS MANUEL

8    TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee"

9    ("TAPIA"), FNU LNU, aka "Pancho" ("PANCHO"), DIANA SOPHIA ZAMORA,

10   aka "So Fresh," aka "Marie" ("ZAMORA"), EDGAR RAFAEL AGUILAR, aka

11   "Li'l Silent," aka "Silent," aka "Pilot" ("AGUILAR"), ROGER

12   GONZALES ARMENDARIZ, aka "Chumash," aka "Twenty-four"

13   ("ARMENDARIZ"), and JAIME CARDENAS, aka "Terco," aka "Li'l Pilot"

14   ("CARDENAS"), and others known and unknown to the Grand Jury,

15   conspired and agreed with each other to knowingly and

16   intentionally (a) possess with intent to distribute; and (b)

17   distribute controlled substances, in violation of Title 21,

18   United States Code, Section 841(a)(1).

19         2.    It is further alleged that the conspiracy was intended

20   to involve, and did involve:

21              (a)   at least one kilogram of a mixture and substance

22   containing a detectable amount of heroin, a Schedule I narcotic

23   drug controlled substance, in violation of Title 21, United

24   States Code, Section 841(b)(1)(A)(i);

25              (b)   at least 50 grams of methamphetamine, a Schedule

26   II controlled substance, in violation of Title 21, United States

27   Code, Section 841(b)(1)(A)(viii); and

28              (c)   at least 500 grams of a mixture and substance

                                  2

1  containing a detectable amount of cocaine, a Schedule II narcotic

2  drug controlled substance, in violation of Title 21, United

3  States Code, Section 841(b)(1)(B)(ii).

4  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

5       ACCOMPLISHED

6        The objects of the conspiracy were to be accomplished in

7  substance as follows:

8        1.   Defendant TAPIA would lead, direct, and manage a drug

9  trafficking organization (the "TAPIA DTO") in the Ventura County

10  area involved in the distribution of substantial quantities of

11  methamphetamine, cocaine, heroin, and other drugs throughout

12  Southern California and other states.

13        2.   The TAPIA DTO would also unlawfully sell firearms,

14  including fully automatic machineguns, semi-automatic assault

15  rifles, handguns, and ammunition.

16        3.   Defendant PANCHO would supply the TAPIA DTO with large

17  quantities of narcotics for re-sale that he imported from Mexico

18  and other locations.

19        4.   Defendants ZAMORA, AGUILAR, ARMENDARIZ, and CARDENAS

20  would assist the TAPIA DTO in its narcotics and firearms

21  trafficking by, among other things, transporting narcotics and

22  firearms for defendant TAPIA, transporting defendant TAPIA to

23  transactions, and attending and participating in meetings where

24  illegal contraband was brokered and sold.

25        5.   Members of the TAPIA DTO would employ the use of

26  vehicles with hidden compartments to conceal narcotics, firearms,

27  and proceeds from the sales of narcotics and firearms.

28        6.   Defendants TAPIA and AGUILAR would operate a drug stash

1  house located on S. Ventura Road in Oxnard, California ("TAPIA's

2  Stash House"), which would serve as a drug re-supply base for the

3  TAPIA DTO.

4      7.   Defendant ZAMORA would act as a low-level

5  methamphetamine distributor engaged in the sales of

6  methamphetamine supplied by the TAPIA DTO.

7  C.   OVERT ACTS

8      In furtherance of the conspiracy and to accomplish the

9  objects of the conspiracy, on or about the following dates,

10  defendants TAPIA, PANCHO, ZAMORA, AGUILAR, ARMENDARIZ, and

11  CARDENAS, and others known and unknown to the Grand Jury,

12  committed various overt acts within the Central District of

13  California, and elsewhere, including but not limited to the

14  following:

15      1.   On March 8, 2011, defendant TAPIA, during a telephone

16  conversation, told a person he believed to be a narcotics and

17  firearms customer but who was, in fact, a confidential informant

18  working for the Federal Bureau of Investigation ("FBI")

19  (hereinafter "CI-1"), that defendant TAPIA had just returned from

20  Mexico and had some business to discuss with CI-1.

21      2.   On March 9, 2011, defendants TAPIA and AGUILAR met with

22  CI-1 to discuss defendant TAPIA's trip to Mexico and defendant

23  TAPIA's knowledge of the interactions between the La Familia

24  Michaocana drug cartel and Southern California gangs with respect

25  to narcotics trafficking.

26      3.   On March 9, 2011, defendant TAPIA showed CI-1 his Honda

27  car that contained hidden compartments to store contraband

28  ("TAPIA's Honda"), which at that time contained methamphetamine,

4

1  heroin, and cocaine.

2  　　　4.　On March 18, 2011, defendant TAPIA, using coded

3  language during a telephone conversation, told CI-1 that

4  defendant TAPIA wanted to introduce CI-1 to defendant TAPIA's

5  narcotics source of supply.

6  　　　5.　On March 18, 2011, defendant ARMENDARIZ and CI-1 met

7  with defendant TAPIA in order to meet defendant TAPIA's narcotics

8  source of supply but the trip was cancelled because defendant

9  TAPIA's Honda needed repairs; instead, defendant TAPIA showed

10 defendant ARMENDARIZ and CI-1 one ounce of methamphetamine and

11 stated that defendant TAPIA's narcotics source of supply was

12 going to obtain twenty pounds of methamphetamine.

13 　　　6.　On March 31, 2011, defendants TAPIA and ARMENDARIZ met

14 with other members of the TAPIA DTO to discuss possible

15 government informants in the TAPIA DTO and possibly burning down

16 the house of or assaulting an individual who had been associating

17 with a rival drug trafficking organization.

18 　　　7.　On April 29, 2011, defendants TAPIA and CARDENAS met

19 with another person they believed to be a narcotics and firearms

20 customer but who was, in fact, a confidential informant working

21 for the FBI (hereinafter "CI-2"), and discussed future narcotics

22 and firearms sales, namely, future transactions involving

23 methamphetamine and two assault rifles.

24 　　　8.　On May 18, 2011, defendant TAPIA, using coded language

25 during a telephone conversation, agreed to sell four ounces of

26 methamphetamine and firearms to CI-2.

27 　　　9.　On May 19, 2011, defendant TAPIA, using coded language

28 during a telephone conversation, finalized the plan to sell the

four ounces of methamphetamine to CI-2 and told CI-2 that defendant TAPIA would have someone bring the narcotics to their transaction.

10. On May 19, 2011, defendant TAPIA met with CI-2 and then contacted defendant ZAMORA to bring the methamphetamine to the meeting.

11. On May 19, 2011, defendant TAPIA told CI-2 that defendant TAPIA would (a) beat any price for methamphetamine that CI-2 was currently paying; (b) guarantee the quality of his drugs; and (c) agree to possibly move up to fifteen-pound methamphetamine sales with CI-2.

12. On May 19, 2011, defendant TAPIA, during the same conversation with CI-2, further discussed (a) the prices for assault rifles ($1,200-$1,500) and handguns ($350-$500); (b) that he wanted to make $100,000 per drug sale; (c) that he imported marijuana from Mexico through Arizona; (d) that he had narcotics-trafficking groups established in Los Angeles and Orange Counties and that he only used trusted groups to distribute his narcotics; (e) the different market bulk prices in various states for cocaine and heroin; (f) that he had connections with methamphetamine manufacturers in Mexico so he could obtain methamphetamine regularly; and (g) that he monopolized different narcotic distribution areas because he supplied them with high-quality narcotics.

13. On May 19, 2011, defendant TAPIA told defendant ZAMORA to bring the four ounces of methamphetamine to the transaction with CI-2.

14. On May 19, 2011, defendant ZAMORA, driving defendant

6

TAPIA's Honda, took the four ounces of methamphetamine to the transaction with CI-2, assisted defendant TAPIA in performing the sequence of actions required to open the hidden compartment in defendant TAPIA's Honda where the narcotics were hidden, and assisted defendant TAPIA in re-packaging the narcotics for delivery to CI-2.

15.  On May 19, 2011, defendant TAPIA, aided by defendant ZAMORA, sold CI-2 approximately 111.2 grams of methamphetamine in exchange for $4,000.

16.  On May 19, 2011, defendant TAPIA told CI-2 that defendant TAPIA's sister-in-law had an AR-15 semi-automatic assault rifle that he would be willing to sell to CI-2.

17.  On June 2, 2011, defendant TAPIA, using coded language during a telephone conversation, confirmed with CI-2 that the four ounces of methamphetamine (from the May 19, 2011 transaction) were of high quality and told CI-2 that defendant TAPIA had a gun to sell CI-2.

18.  On June 8, 2011, defendant TAPIA and an unindicted co-conspirator met with CI-1 and CI-2 at a hotel in Camarillo, California, and defendant TAPIA sold CI-2 a Norinco, SKS assault rifle, a Bushmaster, AR-15 assault rifle, and ammunition for a total of $2,000.

19.  On June 8, 2011, defendant TAPIA, during the firearms transaction, told CI-2 that he (a) had been stockpiling guns for sale; (b) had burned down a police station in their neighborhood; (c) typically obtained significant quantities of high-grade cocaine; (d) sent his narcotics proceeds back to Mexico; (e) could obtain vehicles with hidden compartments; (f) traded his

narcotics for guns; (g) had a narcotics-supply pipeline running from Mexico; (h) paid $33,500 per kilogram of heroin; (i) controlled the market on heroin; (j) had heroin customers throughout Southern California and sold a kilogram of heroin every week or two weeks, but made more money transporting and distributing heroin out of state; and (k) believed that heroin that was so strong that it killed people was a "good advertisement."

20.  On June 8, 2011, defendant TAPIA also told CI-2 that he (a) needed help laundering his money; (b) used other people's money to purchase his narcotics; and (c) knew what "it fe[lt] like to be a CEO."

21.  On June 8, 2011, defendant TAPIA gave CI-2 approximately 14.1 grams of cocaine.

22.  On June 17, 2011, defendants TAPIA and ZAMORA met at a hotel in Camarillo, California, and sold CI-2 an ITM Arms, model MK-99, assault rifle and ammunition for $3,000, and defendant TAPIA told CI-2 that he had just come from his (defendant TAPIA's) mother's house and that he had an additional gun he could potentially sell to CI-2.

23.  On June 17, 2011, defendant TAPIA also told CI-2 that he (a) had connections in Mexico that he believed were corrupt law enforcement officers who could supply him with 300 assault rifles at a time; (b) had distributed heroin that killed six people; (c) was interested in the price of grenades; (d) had a source in Tecate, Mexico, who could make cars with hidden compartments ("trap cars"); (e) liked to keep his own trap car secret but would show CI-2 the hidden compartments in his trap

1  car; and (f) had heroin to distribute to CI-2 as a sample.

2      24.  On June 17, 2011, defendant TAPIA, assisted by

3  defendant ZAMORA, sold CI-2 approximately 27.6 grams of

4  methamphetamine in exchange for $1,000 and provided CI-2 with

5  approximately .19 grams of heroin as a sample, which narcotics

6  had been secreted in the hidden compartment in defendant TAPIA's

7  Honda.

8      25.  On June 17, 2011, defendant TAPIA asked if CI-2 would

9  enter into an agreement to split the cost of a kilogram of heroin

10  and told CI-2 that defendant TAPIA was looking for help smuggling

11  narcotics proceeds.

12      26.  On June 22, 2011, defendant ZAMORA possessed on the

13  passenger seat of defendant TAPIA's Honda three bindles of

14  methamphetamine, paperwork belonging to defendants ZAMORA and

15  TAPIA, and pay/owe sheets.  In addition, defendant ZAMORA further

16  possessed in the hidden compartment of defendant TAPIA's Honda

17  the following items: approximately 234 grams of methamphetamine;

18  1.13 kilograms of heroin; 532 grams of cocaine; a loaded Taurus

19  .38 caliber revolver; a loaded Smith & Wesson 9mm handgun; two

20  Smith & Wesson 9mm law-enforcement-only, high-capacity magazines;

21  50 rounds of .45 caliber ammunition; 51 rounds of .357 caliber

22  ammunition; 35 rounds of .380 caliber ammunition; five rounds of

23  .38 caliber ammunition; one shotgun shell; six rounds of 9mm

24  ammunition; and $10,020 in cash.

25      27.  On July 19, 2011, defendants TAPIA, ZAMORA, and

26  ARMENDARIZ met in the parking lot of a hotel, and defendant

27  ZAMORA handed defendant ARMENDARIZ a black bag containing three

28  handguns.

28. On July 19, 2011, defendants TAPIA, ZAMORA, and ARMENDARIZ met CI-2 in a hotel room and sold CI-2 ammunition and the following three handguns: (a) a Glock, model 17, 9mm caliber handgun; (b) a Ruger, Security model, .357 caliber handgun; and (c) a Daewoo, model DP51C, 9mm caliber handgun.

29. On July 19, 2011, defendant TAPIA, during the firearms transaction with defendants ZAMORA and ARMENDARIZ, told CI-2 that he (a) had high-capacity magazines; (b) wanted to do a larger gun transaction involving approximately 70 guns; (c) could supply CI-2 with automatic rifles and other guns; (d) had recently suffered a law enforcement seizure of his contraband; and (e) had a sore wrist from recently shooting a .45 caliber gun.

30. On July 19, 2011, defendant ARMENDARIZ, during the firearms transaction with defendants TAPIA and ZAMORA, asked CI-2 if CI-2 was interested in purchasing automatic weapons or any other particular guns.

31. On August 4, 2011, defendant AGUILAR obtained approximately one pound of methamphetamine, which was packaged in a clear plastic Rubbermaid container with a red lid, from defendant TAPIA's Stash House.

32. On August 23, 2011, defendant TAPIA, using coded language during a telephone conversation, set up a meeting on August 25, 2011 to sell firearms to CI-2.

33. On August 25, 2011, defendants TAPIA and CARDENAS, and an unindicted co-conspirator, met with CI-2 in a hotel and sold CI-2 ammunition and the following three handguns for $1,400: (a) a Smith & Wesson, model 586, .357 caliber handgun; (b) a Ruger, Security Six model, .357 caliber handgun; and (c) a Harrison &

1  Richards, model 999, .22 caliber handgun, and defendant CARDENAS

2  showed CI-2 how to operate the Harrison & Richards handgun.

3      34.  On August 25, 2011, defendant TAPIA, during the meeting

4  with defendant CARDENAS and CI-2, stated that he (a) hid his

5  weapons in various counties; (b) had an AK-47 assault rifle; (c)

6  liked small revolvers such as the Smith & Wesson handgun because

7  they were easier to use to shoot someone; (d) had a market for

8  street guns; and (e) had a .22 caliber rifle with a scope.

9      35.  On August 25, 2011, defendant TAPIA, during the meeting

10 with defendant CARDENAS and CI-2, further stated that he (a) was

11 looking for an unindicted co-conspirator who had lost $100,000

12 worth of defendant TAPIA's drugs; (b) knew his organization

13 contemplated sending up "a serious guy, cut your fingers off

14 [type]" from Mexico to obtain the narcotics or money back; and

15 (c) could obtain automatic weapons and handguns from his

16 stockpiles that he hid in multiple locations.

17     36.  On September 8, 2011, defendant TAPIA, during a meeting

18 in a hotel room, sold CI-2 ammunition and the following three

19 handguns for $1,300: (a) a Ruger, model SP101, .38 caliber

20 handgun; (b) a Sig Sauer, model P229, .40 caliber handgun; and

21 (c) a Bryco Arms, model 38, .380 caliber handgun.

22     37.  On September 8, 2011, defendant TAPIA, during the

23 meeting in the hotel room, told CI-2 that he (a) had a source for

24 AK-47 assault rifles; (b) knew that defendant TAPIA's Honda had

25 been seized by the police; (c) was interested in obtaining

26 silencers and had a source who could make them; and (d) would be

27 bringing narcotics sources to a Las Vegas meeting with CI-2.

28     38.  On September 16, 2011, defendants TAPIA and PANCHO, in

1  a hotel room in Las Vegas, Nevada, met with CI-2 and a person

2  defendants TAPIA and PANCHO believed was the crime boss of CI-2

3  but who was, in fact, an undercover FBI agent (the "UC"), in

4  order to negotiate the sale of ten pounds of methamphetamine and

5  four kilograms of cocaine in exchange for $200,000.

6      39.  On September 16, 2011, defendant TAPIA, at the meeting

7  in Las Vegas, further stated that he (a) distributed heroin,

8  powder cocaine, methamphetamine, marijuana, and crystal

9  methamphetamine; (b) dealt in high-quality methamphetamine and

10  sold it for $12,000 per pound; (c) knew that there were

11  difficulties in obtaining methamphetamine from Mexico and only

12  well-connected people like defendants TAPIA and PANCHO would be

13  able to obtain it regularly; (d) sold both generic and quality

14  types of cocaine with the latter costing $23,000 per kilogram;

15  (e) along with defendant PANCHO, wanted the UC to pay a visit to

16  the unindicted co-conspirator who had lost their $100,000-worth

17  of narcotics and would pay the UC $20,000 for the job; and (f)

18  knew that their organization had previously sent someone to

19  recover the money but that no action was taken at that time

20  because the unindicted co-conspirator's family was present on

21  that occasion.

22      40.  On September 16, 2011, defendants TAPIA and PANCHO

23  attended a dinner with the UC and CI-2 in order to further

24  discuss their illegal business relationship, and during this

25  dinner, defendants TAPIA and PANCHO stated (a) that they paid off

26  people at the Mexico-United States border in order to import

27  narcotics in heavy equipment; (b) that they transported drugs to

28  Chicago in tractor trailers; (c) that they could sell larger

1  quantities than the ten pounds of methamphetamine and four
2  kilograms of cocaine they had previously agreed to supply to the
3  UC and CI-2; and (d) that they were ready to deliver the ten
4  pounds of methamphetamine the next day.

5      41.  On September 17, 2011, defendants TAPIA and PANCHO, and
6  unindicted co-conspirators, attended a further meeting in the Las
7  Vegas hotel room with CI-2, during which defendant PANCHO stated
8  (a) that the ten pound methamphetamine and four kilogram cocaine
9  deal they had discussed was finalized; (b) that they could double
10 the quantities of the drug deal (to twenty pounds and eight
11 kilograms, respectively) next time; (c) that defendants TAPIA and
12 PANCHO wanted CI-2's help in tracking down the two individuals
13 responsible for the $100,000 loss to their organization and
14 provided the targets' personal information and addresses to CI-2;
15 (d) that he could provide AK-47s, AR-15s, fully automatic
16 weapons, and guns that fire ammunition capable of piercing law
17 enforcement vests; and (e) that he had a connection to a
18 machinist who could convert semi-automatic guns into fully
19 automatic weapons.

20     42.  On October 19, 2011, defendant TAPIA, during a meeting
21 in a hotel room, sold CI-2 a fully automatic AK-47 assault rifle,
22 a Taurus, 38 Special model, .38 caliber handgun, and ammunition
23 for $1,900.

24     43.  On October 19, 2011, defendant TAPIA, during the
25 meeting in the hotel room, told CI-2 that defendant TAPIA (a)
26 just wanted a gun that "shoots people"; (b) had given one of his
27 personal guns to the machinist he had mentioned in their previous
28 meeting to work on; (c) had a connection in Los Angeles,

California, for M-16s, MP-5s, AK-47s, and Desert Eagle rifles;
(d) would get more guns from defendant PANCHO and their Arizona
gun source; and (e) confirmed that the methamphetamine and
cocaine deal they had previously discussed was set to go and that
defendant TAPIA had recently obtained 15 pounds of
methamphetamine from his source, while another person had
obtained 80 pounds and another 30 pounds of methamphetamine from
the same source.

    44.  On October 25, 2011, defendants TAPIA and ZAMORA
distributed ten pounds of methamphetamine to CI-2 to partially
consummate the deal previously negotiated in Las Vegas.

    45.  On October 25, 2011, defendants TAPIA and ZAMORA, in a
hidden compartment inside defendant TAPIA's Prelude, possessed
approximately 310 grams of a mixture and substance containing a
detectable amount of methamphetamine and a loaded Mauser-Werke,
.22 caliber handgun.

    46.  On October 25, 2011, defendant ZAMORA, in her purse,
possessed approximately 52 grams of a mixture and substance
containing a detectable amount of methamphetamine that was
individually packaged for sale.

    47.  On October 25, 2011, defendant ZAMORA, in the bedroom
of her residence on Saturn Street in Camarillo, California,
possessed approximately 17 grams of a mixture and substance
containing a detectable amount of methamphetamine, packaging
material, and handwritten bank account numbers and passwords.

    48.  On October 25, 2011, defendant AGUILAR possessed
approximately two grams of a mixture and substance containing a
detectable amount of methamphetamine, a digital scale, a triple-

1 │ beam scale, and various balancing weights.

2 │     49.  On October 25, 2011, defendant TAPIA, at his parents'

3 │ residence on West Hill Street in Oxnard, California, possessed an

4 │ AK-47 assault rifle, a sawed-off shotgun, and approximately

5 │ $10,000 in cash.

6 │     50.  On October 25, 2011, defendant AGUILAR possessed a

7 │ cellular telephone that contained coded text messages describing

8 │ defendant AGUILAR's involvement in transporting narcotics.

COUNT TWO

[18 U.S.C. § 371]

A.   OBJECT OF THE CONSPIRACY

     1.   Beginning on an unknown date, and continuing until on or about October 25, 2011, in Ventura County, within the Central District of California, and elsewhere, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), FNU LNU, aka "Pancho" ("PANCHO"), DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie" ("ZAMORA"), ROGER GONZALES ARMENDARIZ, aka "Chumash," aka "Twenty-Four" ("ARMENDARIZ"), and JAIME CARDENAS, aka "Terco," aka "Li'l Pilot" ("CARDENAS"), and others known and unknown to the Grand Jury, conspired and agreed with each other to willfully engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     The object of the conspiracy was to be accomplished in substance as follows:

     1.   Defendant TAPIA would lead, direct, and manage a firearms trafficking organization (the "TAPIA FTO") in the Ventura County area involved in the distribution of substantial quantities of firearms, including fully automatic machineguns, semi-automatic assault rifles, and handguns.

     2.   Defendant PANCHO would act as one source of supply for the weapons and would also use his firearms contacts, such as a machinist capable of modifying weapons, on behalf of the TAPIA FTO.

16

3.     Defendants PANCHO, ZAMORA, ARMENDARIZ, and CARDENAS, and others known and unknown to the Grand Jury, would assist the TAPIA FTO by, among other things, transporting defendant TAPIA to, and attending, meetings with prospective buyers, transporting the firearms, and negotiating and explaining relevant information at said meetings.

C.    <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following dates, defendants TAPIA, PANCHO, ZAMORA, ARMENDARIZ, and CARDENAS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

1.    Overt Acts 1, 2, 7-9, 12, 16, 17-19, 22, 23, 27-30, 32, 34-38, and 40-43 of Count One are re-alleged and incorporated by reference as if fully set forth herein.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 19, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally distributed at least 50 grams, that is, approximately 111.2 grams, of methamphetamine, a Schedule II controlled substance.

1                         COUNT FOUR

2              [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

3        On or about June 8, 2011, in Ventura County, within the

4   Central District of California, defendant LUIS MANUEL TAPIA, also

5   known as ("aka") "Taps," aka "LT," aka "Bizee," knowingly and

6   intentionally distributed approximately 14.1 grams of a mixture

7   and substance containing a detectable amount of cocaine, a

8   Schedule II narcotic drug controlled substance.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[18 U.S.C. § 922(g)(1)]

On or about June 8, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Norinco, SKS model, 7.62 caliber rifle, bearing serial number 8039938, and a Bushmaster, model AR-15, .223 caliber rifle, bearing serial number L276480, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

1
2

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

3     On or about June 17, 2011, in Ventura County, within the
4 Central District of California, defendants LUIS MANUEL TAPIA,
5 also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA
6 SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and
7 intentionally distributed at least five grams, that is,
8 approximately 27.6 grams, of methamphetamine, a Schedule II
9 controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about June 17, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka ""So Fresh," aka "Marie," knowingly and intentionally distributed approximately .19 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT EIGHT

[18 U.S.C. § 922(g)(1)]

On or about June 17, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed a firearm, namely, an ITM Arms, model MK-99, 7.62 caliber rifle, bearing serial number 16354, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i)]

On or about June 22, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally possessed with intent to distribute at least one kilogram, that is approximately 1.13 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about June 22, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 234 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

On or about June 22, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 532 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

1

COUNT TWELVE

2

[18 U.S.C. § 924(c)(1)(A)]

3

On or about June 22, 2011, in Ventura County, within the

4

Central District of California, defendants LUIS MANUEL TAPIA,

5

also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA

6

SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly used and

7

carried a firearm, namely, a loaded Taurus, model 38 Revolver,

8

.38 caliber handgun, bearing serial number HE39149, and a loaded

9

Smith & Wesson, model SW9VE, 9mm caliber handgun, bearing serial

10

number PDN0790, during and in relation to, and possessed that

11

firearm in furtherance of, a drug trafficking crime, namely,

12

possession with intent to distribute heroin, methamphetamine, and

13

cocaine, in violation of Title 21, United States Code, Section

14

841(a)(1), as charged in Counts Nine, Ten, and Eleven of this

15

Indictment.

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THIRTEEN

[18 U.S.C. § 922(g)(1)]

On or about June 22, 2011, in Los Angeles County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Taurus, model 38 Revolver, .38 caliber handgun, bearing serial number HE39149, and a Smith & Wesson, model SW9VE, 9mm caliber handgun, bearing serial number PDN0790, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT FOURTEEN

[18 U.S.C. § 922(g)(1)]

On or about July 19, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), and ROGER GONZALES ARMENDARIZ, aka "Chumash," aka "Twenty-four" ("ARMENDARIZ"), knowingly possessed firearms, namely, a Glock, model 17, 9mm caliber handgun, bearing serial number KE968; a Ruger, Security model, .357 caliber handgun, bearing serial number 151-34739; and a Daewoo, model DP51C, 9mm caliber handgun, bearing serial number BB1003335, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

Such possession occurred after defendant ARMENDARIZ had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely, Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court of the State of California,

29

County of Ventura, case number 2010025027, on or about September 2, 2010.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about August 4, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and EDGAR RAFAEL AGUILAR, aka "Li'l Silent," aka "Silent," aka "Pilot," knowingly and intentionally possessed with intent to distribute at least 50 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[18 U.S.C. § 922(g)(1)]

On or about August 25, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Smith & Wesson, model 586, .357 caliber handgun, bearing serial number AAB0509; a Ruger, Security Six model, .357 caliber handgun, bearing serial number 159-94839; and an H&R, model 999, .22 caliber handgun, bearing serial number AY085769, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT SEVENTEEN

[18 U.S.C. § 922(g)(1)]

On or about September 8, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Ruger, model SP101, .38 caliber handgun, bearing serial number 573-23927; a Sig Sauer, model P229, .40 caliber handgun, bearing serial number AM57664; and a Bryco Arms, model 38, .380 caliber handgun, bearing serial number 132-2789, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

33

COUNT EIGHTEEN

[26 U.S.C. § 5861(e)]

On or about October 19, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly transferred a firearm, namely, an AK-47 fully automatic machinegun, bearing serial number GV4698, which defendant TAPIA knew to be a firearm and machinegun, as those terms are defined in Title 26, United States Code, Sections 5845(a)(6) and 5845(b), and did so in violation of the transfer provisions of Chapter 53, Title 26, United States Code, that is, Title 26, United States Code, Section 5812.

34

COUNT NINETEEN

[18 U.S.C. § 922(g)(1)]

On or about October 19, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Taurus, 38 Special model, .38 caliber handgun, bearing serial number SG46453, and an AK-47, 7.62 caliber machinegun, bearing serial number GV4698, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally distributed at least 50 grams of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly and intentionally possessed with the intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendant DIANA SOPHIA ZAMORA, also known as ("aka") "So Fresh," aka "Marie," knowingly and intentionally possessed with intent to distribute at least five grams of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendant DIANA SOPHIA ZAMORA, also known as ("aka") "So Fresh," aka "Marie," knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance.

39

COUNT TWENTY-FOUR

[18 U.S.C. § 924(c)(1)(A)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendants LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," and DIANA SOPHIA ZAMORA, aka "So Fresh," aka "Marie," knowingly used and carried a firearm, namely, a loaded Mauser-Werke, .22 caliber handgun, bearing serial number 42386, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count Twenty-One of this Indictment.

COUNT TWENTY-FIVE

[18 U.S.C. § 922(g)(1)]

On or about October 25, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed a firearm, namely, a Mauser-Werke, .22 caliber handgun, bearing serial number 42386, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT TWENTY-SIX

[18 U.S.C. § 924(c)(1)(A)]

Beginning on an unknown date, and continuing to on or about October 25, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee," knowingly possessed a firearm, namely, a Winchester, model 1220, sawed-off 12-gauge shotgun, bearing serial number 682369, and an FTC, model AK-47, 7.62 caliber rifle, bearing serial number 392, in furtherance of a drug trafficking crime, namely, conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment.

COUNT TWENTY-SEVEN

[18 U.S.C. § 922(g)(1)]

Beginning on an unknown date, and continuing until on or about October 25, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Winchester, model 1220, sawed-off 12-gauge shotgun, bearing serial number 682369, and an FTC, model AK-47, 7.62 caliber rifle, bearing serial number 392, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

43

COUNT TWENTY-EIGHT

[18 U.S.C. § 922(g)(1)]

Beginning on an unknown date, and continuing until on or about October 25, 2011, in Ventura County, within the Central District of California, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), knowingly possessed firearms, namely, a Winchester, model 1220, sawed-off 12-gauge shotgun, bearing serial number 682369, and an FTC, model AK-47, 7.62 caliber rifle, bearing serial number 392, in and affecting interstate and foreign commerce.

Such possession occurred after defendant TAPIA had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Transport/Sell a Narcotic/Controlled Substance, in violation of California Health and Safety Code Section 11352, in the Superior Court of the State of California, County of Ventura, case number CR37815, on or about December 12, 1995;

(2) Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Ventura, case number 2002004561, on or about October 30, 2003.

COUNT TWENTY-NINE

[21 U.S.C. §§ 848(a), (b), (s)]

Beginning on an unknown date, and continuing until on or about October 25, 2011, in Ventura County, within the Central District of California, and elsewhere, defendant LUIS MANUEL TAPIA, also known as ("aka") "Taps," aka "LT," aka "Bizee" ("TAPIA"), engaged in a continuing criminal enterprise in that he knowingly and intentionally violated Title 21, United States Code, Sections 841 and 846, which violations include, but are not limited to, the felony violations alleged in Counts One, Three, Four, Six, Seven, Nine, Ten, Eleven, Fifteen, Twenty, and Twenty-One, which Counts are realleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of Subchapters I and II of Title 21 of the United States Code, undertaken by defendant TAPIA in concert with at least five other persons with respect to whom defendant TAPIA occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendant TAPIA obtained substantial income and resources.

Furthermore, defendant TAPIA was a principal administrator, organizer, supervisor, and leader of the criminal enterprise, which involved the possession with intent to distribute and distribution of methamphetamine, a Schedule II controlled

//
//
//
//

45

1  substance, and the amount of said methamphetamine was at least

2  1000 grams.

3

4                    A TRUE BILL

5

6                    /S/

                  Foreperson

7

ANDRÉ BIROTTE JR.
8  United States Attorney

9

10 ROBERT E. DUGDALE
Assistant United States Attorney
11 Chief, Criminal Division

12 RODRIGO A. CASTRO-SILVA
Assistant United States Attorney
13 Chief, Organized Crime
   Drug Enforcement Task Force Section
14

ANDREW BROWN
15 Assistant United States Attorney
Deputy Chief, Organized Crime
16    Drug Enforcement Task Force Section

17 MACK E. JENKINS
Assistant United States Attorney
18 Organized Crime Drug Enforcement
   Task Force Section
19

CAMERON L. SCHROEDER
20 Assistant United States Attorney
Organized Crime Drug Enforcement
21    Task Force Section

22

23

24

25

26

27

28